# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

<table>
<tr><td>REDBIRD CAPITAL PARTNERS<br>PLATFORM LP and REDBIRD<br>COMPASS, LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>CONCORDE PARENT, LP, and<br>CONCORDE HOLDCO PARENT, LLC,<br><br>        Defendants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><br><br><br><br><br><br>C.A. No. 2024-0274-SG</td></tr>
</table>

## MEMORANDUM OPINION

Date Submitted:  May 22, 2024
Date Decided:  June 28, 2024

Martin S. Lessner, Tammy L. Mercer, Lauren Dunkle Fortunato, and Andrew J. Cazerkawski, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Johnathan D. Schiller and Thomas H. Sosnowski, BOIES SCHILLER FLEXNER LLP, New York, New York, *Attorneys for Plaintiffs*.

Michael A. Barlow and Hayden J. Driscoll, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, Delaware; OF COUNSEL: Michael B. Carlinsky, Charles H. Sangree, and Caitlin E. Jokubaitis, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York; Christopher D. Porter, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Houston, Texas, *Attorneys for Defendants*.

**GLASSCOCK, Vice Chancellor**

This is a straightforward matter of contract interpretation. The contract at issue is one in which Defendants agreed to buy Compass Datacenters, a specialized construction company, from Plaintiffs. One of Compass Datacenters' projects was to build out datacenter buildings in Dallas, a project not expected to be completed before 2028. As a result, the capital expenditures for the Dallas construction remained a projection at the time of sale. To accommodate truing up of the cap-ex projection, the parties arranged for the buyer to place a part of the purchase price in escrow. In case the parties could not agree to a cap-ex adjustment, the contract provided a resolution provision, involving "arbitration" by a non-arbitrator "expert." Such a disagreement has come to pass.

Plaintiff-sellers seek a declaration as to whether the cap-ex resolution procedure is properly invoked. They point to a broad forum-selection provision designating this Court as the proper forum to resolve any dispute, including whether the matter should even be referred to the expert proceeding called for in the contract. Plaintiffs seek to preliminarily enjoin the submission of the dispute to the expert. Defendants, however, point to the specific resolution procedure applicable to disputes over billed-but-not-booked capital expenditures, and argue that the specific dispute that Plaintiffs seek to place before me is envisioned contractually as a matter for the expert.

1

I assume that irreparable harm will result if Plaintiffs have the contractual right to litigate first in this Court, but are denied that right; and that the equities will follow that contractual right. The parties differ primarily on whether Plaintiffs have shown a reasonable likelihood of success on the merits on the contractual right to have the scope of the dispute adjudicated here, before submission to the expert. Reading the contract as a whole, as I must, I find the cap-ex disagreement at issue here is precisely the issue that the parties have contracted to place before the expert.

Accordingly, Plaintiffs' request for preliminary injunctive relief is denied. My reasoning follows.

## I. BACKGROUND

### A. Factual Background[1]

Compass Datacenters ("Compass" or the "Company") builds and operates data center facilities for major technology and cloud computing companies.[2] On June 20, 2023, Concorde Parent, LP and Concorde Holdco Parent, LLC (collectively, "Defendants") agreed to acquire a controlling stake in Compass from RedBird Capital Partners Platform and RedBird Compass, LLC ("RedBird" or "Plaintiffs") and other equityholders ("Equityholders") pursuant to a transaction agreement (the "Transaction Agreement").[3] At the time of the transaction, Compass

---

[1] The facts in this Memorandum Opinion are limited to those necessary for my analysis.
[2] Verified Compl. ¶ 30, Dkt. No. 1 ("Compl.").
[3] *Id.* ¶ 33.

was engaged in negotiations with a customer regarding that customer's leases of datacenters in Dallas, which resulted in Compass entering an agreement with the customer to construct several buildings in Dallas to be leased by that customer for use as datacenters (the "Dallas Project").[4]

The Dallas Project is not expected to be completed until 2028.[5] Compass's projected billed-but-not-booked capital expenditures ("BBNB CapEx") to construct eight of these datacenters was a material point of Defendants' due diligence and the parties' negotiations.[6] To accommodate for potential changes in Compass's BBNB CapEx, the parties agreed to an escrow arrangement whereby a portion of the purchase price paid by Defendants was initially placed into escrow, rather than paid to the Equityholders at closing.[7] This escrow arrangement permitted a possible future downward adjustment to the purchase price if Compass's BBNB CapEx projections increased by more than 10% between signing, on June 20, 2023, and closing, on October 3, 2023.[8] In the event that the parties could not reach a consensus on the change in Compass's BBNB CapEx projections, the Transaction Agreement provides for an alternative dispute resolution procedure whereby the parties would submit unresolved disputes "to an independent construction consulting

---

[4] *Id.* ¶ 34.
[5] *Id.*
[6] *Id.* ¶ 35.
[7] *Id.* ¶ 41.
[8] *Id.* ¶¶ 41–43.

3

firm" (the "Independent Expert") for "arbitration, acting as an expert and not an arbitrator[.]"[9]

Prior to the October 3, 2023 closing, Compass delivered a "Pre-Closing Statement" to the parties that contained Compass's budget as of that date, which reflected a 4% increase in Compass's BBNB CapEx projections since the June 20, 2023 signing.[10] The transaction closed on October 3, 2023, and RedBird expected that it and the other Equityholders would receive the full amount placed in escrow based on Compass's Pre-Closing Statement.[11] Instead, RedBird received a one-page document entitled "Post-Closing Statement" from Defendants on December 29, 2023, containing BBNB CapEx projections reflecting an increase in Compass's BBNB CapEx projections greater than 10%, which would entitle Defendants to the escrowed amount.[12] RedBird sent a letter to Defendants on January 18, 2024, detailing RedBird's concerns with the Post-Closing Statement and its enclosed BBNB CapEx projections.[13] On February 27, 2024, RedBird reviewed Compass's documents that related to the BBNB CapEx projections, as requested by RedBird to investigate RedBird's concerns with the Post-Closing Statement.[14] During this process, RedBird discovered Compass's management was not involved in preparing

---

[9] Compl., Ex. A § 2.12(c), Dkt. No. 1 ("Transaction Agreement").
[10] Compl. ¶¶ 48, 51.
[11] *Id.* ¶¶ 51–53, 55.
[12] *Id.* ¶¶ 57–58.
[13] *Id.* ¶ 79.
[14] *Id.* ¶ 66.

the Post-Closing Statement, but rather Defendants created a budget with higher BBNB CapEx projections contrary to the methodology and budgets used by Compass.[15]

The parties' dispute has not been submitted to the Independent Consultant, but has been voluntarily stayed pending this decision; the funds remain in an escrow account.[16]

*B. Procedural History*

On March 19, 2024, RedBird filed a complaint for breach of the Transaction Agreement (the "Complaint").[17] The Complaint contains six counts including, *inter alia*, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment, all arising from the parties' dispute over who is entitled to the funds in the escrow account under the Transaction Agreement.[18] Along with the Complaint, RedBird filed a motion to expedite and a motion for a preliminary injunction as to the Independent Consultant process.[19] The matter was expedited on April 1, 2024.[20] The parties completed briefing on RedBird's motion

---

[15] *Id.* ¶¶ 69–71.
[16] *Id.* ¶¶ 60, 82.
[17] *See id.*
[18] *See id.* ¶¶ 89–142.
[19] *See* Pls. RedBird Cap. P'rs Platform LP and RedBird Compass, LLC's Mot. to Expedite, Dkt. No. 1; Mot. of Pls. RedBird Cap. P'rs Platform LP and RedBird Compass for Prelim. Inj. as to the Independent Consultant Process, Dkt. No. 1.
[20] *See* Tr. of 4-1-2024 Tele. re: Pls.' Mot. to Expedite, Dkt. No. 32.

for a preliminary injunction on May 1, 2024,[21] and I heard oral argument on May 22, 2024.[22]

## II. ANALYSIS

The parties' disagreement centers around whether this dispute should first be decided by the Court or submitted to the Independent Consultant, as contemplated by the alternative dispute resolution provision in Section 2.12(c). The alternative dispute resolution procedure requires: First, the Company is to provide a Pre-Closing Statement at least five days prior to the Closing Date, "with reasonable supporting documentation setting forth [] its good faith estimate of the [] Closing BBNB CapEx Budget and the resulting BBNB CapEx Adjustment[.]"[23] Next, Defendants are given ninety days to deliver to RedBird a Post-Closing Statement "with reasonable supporting documentation of *its* calculation of [] any deviations to the Estimate Closing BBNB CapEx Budget provided in the Pre-Closing Statement and the resulting BBNB CapEx Adjustment[.]"[24] This Post-Closing Statement is "final and binding upon the [p]arties on the ninetieth (90th) day following the date on which the Post-Closing Statement was deliver to [RedBird], unless [RedBird] delivers written

---

[21] *See* Pls.' Reply Br. Further Supp. Mot. for Prelim. Inj. as to the Independent Consultant Process, Dkt. No. 40 ("RedBird's RB").

[22] *See* Judicial Action Form re Mot. for Prelim. Inj. Before Vice Chancellor Sam Glasscock dated 5.22.24, Dkt. No. 52.

[23] Transaction Agreement § 2.12(a).

[24] *Id.* § 2.12(b) (emphasis added).

6

notice of its disagreement with the Post-Closing Statement."[25]  If a notice of disagreement is delivered to Defendants, the parties are given a fourteen day negotiation period during which time the parties are to "seek in good faith to resolve in writing any differences that they may have with respect to the matters specified in the Notice of Disagreement."[26]  In the event the parties have not resolved the matters, the parties

> shall submit (i) any dispute relating to the BBNB CapEx Adjustment to an independent construction consulting firm [] and (ii) any dispute relating to any component of the Post-Closing Statement other than the BBNB CapEx Adjustment to an independent accounting firm[,] . . . in each case for arbitration, acting as an expert and not an arbitrator[.][27]

RedBird seeks to enjoin Defendants from submitting the parties' dispute to the Independent Consultant until this Court has adjudicated RedBird's claims, specifically its claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment, all of which relate to Defendants' calculation of its BBNB CapEx Post-Closing Statement.[28]  "A preliminary injunction is an extraordinary form of relief[.]"[29]  A party seeking a preliminary injunction "must demonstrate (i) a reasonable probability of success on the merits; (ii) that they will suffer irreparable injury if an injunction is not granted; and (iii)

---

[25] *Id.* § 2.12(c).

[26] *Id.*

[27] *Id.*

[28] Compl. ¶ 84, Prayer for Relief ¶ A; Pls.' Opening Br. Supp. Mot. for Prelim. Inj. as to Independent Consultant Process 14–16, Dkt. No. 1 ("RedBird's OB").

[29] *Next Level Commc'ns, Inc. v. Motorola, Inc.*, 834 A.2d 818, 845 (Del. Ch. 2003).

that the balance of the equities favors the issuance of an injunction."[30] While "[t]he elements are not necessarily weighed equally[,] . . . a failure of proof on one of the elements will defeat the application."[31]

With respect to the first element, RedBird asserts that it has shown a reasonable likelihood of success that the parties are not required to submit RedBird's claims to the Independent Consultant because the parties agreed to a forum selection provision in Section 11.15.[32] Section 11.15 requires "that all Actions (whether in contract or tort, at law or in equity or otherwise) that may be based upon, arise out of, or relate to this Agreement . . . shall be exclusively resolved in the Delaware Court of Chancery[.]"[33] RedBird asserts that this is one of the broadest possible forum selection clauses that requires *all* disputes about parties' contractual rights to be adjudicated by the Court before being submitted to an expert.[34] Thus, according to RedBird, Section 11.15 dictates that the Independent Consultant process should be enjoined because the Court must, in the first instance, interpret the Transaction Agreement.[35]

---

[30] *Mountain W. Series of Lockton Co., LLC v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104, at *9 (Del. Ch. June 20, 2019) (citations omitted).
[31] *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 579 (Del. Ch. 1998).
[32] RedBird's OB 14–15.
[33] Transaction Agreement § 11.15.
[34] RedBird's RB 12–13.
[35] RedBird's OB 15–16.

While RedBird argues that I do not need to look beyond Section 11.15 to decide its motion for a preliminary injunction, *Chicago Bridge* and its progeny dictate that the Transaction Agreement be "read in full and situated in the commercial context between the parties."[36] Accordingly, I must also consider Section 2.12, which lays out the agreed-to alternative dispute resolution ("ADR") process, to determine the scope of the Independent Consultant's authority and whether this dispute should be submitted to the Independent Consultant. In a situation like this, where the ADR process agreed to by the parties "entrust[s] a discrete decision to an expert, . . . the court applies contract interpretation principles to determine the ADR provision's scope."[37] According to Defendants, the parties' dispute falls squarely in the Independent Consultant's scope of authority in Section 2.12(c), so the preliminary injunction should be denied.[38] I agree.

The parties agreed to an ADR process in the event that the parties disputed whether Compass's BBNB CapEx budget had increased by more than 10% between the signing and closing dates. In accordance with Section 2.12, five days prior to the Closing Date, the Company "deliver[ed] to [Defendants] a statement (the 'Pre-Closing Statement') with reasonable supporting documentation setting forth [] its good faith estimate of the [] Closing BBNB CapEx Budget and the resulting BBNB

---

[36] *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 926–27 (Del. 2017).
[37] *Terrell v. Kiromic Biopharma, Inc.*, 297 A.3d 610, 617 (Del. 2023).
[38] Defs.' Answering Br. Opp'n Pls.' Mot. for a Prelim. Inj. 23–26, Dkt. No. 37.

CapEx Adjustment (the 'Estimated BBNB CapEx Adjustment')[.]"[39] Following the Closing Date, Defendants had ninety days to deliver to the Equityholder Representative a statement (the 'Post-Closing Statement') with reasonable supporting documentation of its calculation of [] any deviations to the Estimated Closing BBNB CapEx Budget provided in the Pre-Closing Statement and the resulting BBNB CapEx Adjustment,"[40] which Defendants did. Thereafter, Section 2.12 provides that, unless the Equityholders issue a written notice stating that they disagree with the Post-Closing Statement within ninety days of receipt, the Post-Closing Statement becomes final and binding upon the parties.[41] If, however, the Equityholders deliver written notice of disagreement, the parties are contractually obligated to enter into a fourteen-day "Negotiation Period" during which the parties are to work in good faith to resolve any disagreements specified in the notice.[42]

In the event the parties are unable to resolve their disputes during the Negotiation Period, the Transaction Agreement directs the parties to "submit [ ] *any dispute* relating to the BBNB CapEx Adjustment to an independent consulting firm (the 'Independent Consultant') . . . for arbitration, acting as an expert and not as an arbitrator[.]"[43] In conducting its review, the Independent Consultant is directed to

---

[39] Transaction Agreement § 2.12(a).
[40] *Id.* § 2.12(b).
[41] *Id.* § 2.12(c).
[42] *Id.*
[43] *Id.* (emphasis added).

"take into account . . . the historical principles and methodologies used by the Company in preparing the Signing BBNB CapEx Budget and the Closing BBNB CapEx Budget."[44] The Independent Expert is empowered to use its own expertise to calculate its CapEx Budget, constrained at the minimum by the amount RedBird claims the budget grew (or did not grow) and at the maximum by the amount Defendants claim the budget grew.[45] To aide in its expert determination, the Independent Consultant may request, and be given, "access to the Company's and any Company Subsidiary's books, records, budgets, Contracts, job cost reports, personnel, Representatives (including the Company's accountants and engineers, properties and facilities, . . . to the extent relevant to confirming the Closing BBNB CapEx Budget and the resulting BBNB CapEx Adjustment."[46]

Since the Independent Consultant is "an expert and not an arbitrator[,]"[47] RedBird asserts that the Independent Consultant process must be enjoined until this Court determines whether Defendants' Post-Closing Statement relies on a budget that complies with the contractual definition of "Closing BBNB CapEx Budget" to decide whether Defendants can submit the Post-Closing Statement to the

---

[44] *Id.*

[45] *Id.* ("The applicable Independent [Consultant] may not assign a value greater than the greatest value for such item claimed by either Party or smaller than the smallest value for such item claimed by [Concorde], on the one hand, and [RedBird], on the other hand.").

[46] *Id.*

[47] *Id.* § 2.12(c).

11

Independent Consultant at all.[48]  RedBird contends that Section 2.12 does not give Defendants authority to submit its own budget in the Post-Closing Statement, otherwise Defendants could always create a higher budget and cause the Independent Consultant to distribute all of the money in escrow to Defendants.[49]  But that is a non-sequitur; the validity of Defendants' budget is the very issue delegated to the Independent Consultant for resolution.  RedBird appears to read the ADR provision as giving the Independent Consultant a dichotomous choice: to find that (i) the Company's Pre-Closing Statement reflects the accurate change in the Company's budget between signing and closing dates or (ii) Defendant's Post-Closing Statement accurately reflects such change.[50]  That contention, however, misconstrues the ADR provision.

As I read the ADR provision in Section 2.12, the Independent Consultant is to review a large swath of materials, from books and records to the actual construction sites, to conduct its own independent analysis and reach a determination of how much the Company's budget increased during the specified time period, bracketed at a minimum by the Pre-Closing Statement and at a maximum by the Post-Closing Statement.  The parties envisioned that determination, requiring as it does non-legal expertise, falling to the Independent Consultant.  Because that is my

---

[48] RedBird's OB 15–16.
[49] RedBird's RB 10–12.
[50] *See id.*

reading of the contract at this Preliminary Injunction phase of the proceedings, Plaintiff has failed to demonstrate a reasonable likelihood of success on the merits; that is, it appears more likely than not that this issue is one for the Independent Consultant.

This Court enforces parties' contractual agreements, even if a party has come to believe that it received a bad deal.[51]  The parties foresaw that they would dispute the purported increase in the Company's BBNB CapEx Budget, with each side advocating for a calculation that would result in their side receiving the escrowed funds.  Accordingly, the parties agreed to an ADR process whereby the parties would enter into negotiation; where that failed, the Independent Consultant would independently calculate the increase in the Company's BBNB CapEx Budget after each side submitted to the Independent Consultant their respective calculations, within a range bounded by those calculations.

As I interpret the Transaction Agreement, this dispute over the BBNB CapEx Budget must first be submitted to the Independent Consultant before any remaining legal claims arising therefrom are brought in this Court.  If I were to enjoin the Independent Consultant process to first determine RedBird's legal claims, such a determination would necessarily require a presentation by each side to explain whether Defendants prepared the Post-Closing Statement accurately and in

---

[51] *See Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

accordance with the Transaction Agreement. This would involve the application of the very expertise that the Transaction Agreement sought to employ via the Independent Consultant, but in a costly legal proceeding. The parties, it seems, foresaw this issue and contractually agreed to an independent expert process, as laid out in Section 2.12(c), to review their respective CapEx BBNB Budgets and avoid a battle of the experts in this Court.

Accordingly, I find that the parties have agreed to first submit this budget dispute to the Independent Consultant process as mandated by Section 2.12(c) before the parties can seek resolution before this Court of any legal claims that may arise. Since RedBird has failed to demonstrate a reasonable likelihood of success on the merits, RedBird's motion for a preliminary injunction must be denied.

### III. CONCLUSION

RedBird's motion for a preliminary injunction as to the Independent Consultant process is DENIED. Once the Independent Consultant process mandated by Section 2.12 has concluded, the parties may return to this Court to resolve any legal issues then extant, if any. The parties should submit a form of order consistent with this Memorandum Opinion.